IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA PETERSON,<br><br>　　　　Plaintiff,<br>　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.<br><br>　　　　Defendants. | No. C 12-00988 SI<br><br>**ORDER OF DISMISSAL FOR FAILURE TO STATE A CLAIM** |

On February 21, 2012, *pro se* plaintiff Victoria Peterson filed a complaint seeking money damages from the Office of Treasurer & Tax Collector ("OTTC"), the City and County of San Francisco ("CCSF"), and Deborah B. Honig, Assistant Tax Collector Attorney, individually. On March 30, 2012, the Court dismissed her complaint for failure to state a claim, with leave to amend. On May 14, 2012, Peterson filed her first amended complaint ("FAC") alleging claims under 42 U.S.C. § 1983, based on alleged violations of the Fifth, Thirteenth, and Fourteenth Amendments to the U.S. Constitution; claims for violation of the Americans with Disabilities Act ("ADA"); and claims for violation of California state law prohibiting interference with contracts. On July 30, 2012, defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiff has filed an opposition and defendants have filed a reply. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument and hereby VACATES the hearing and case management conference currently scheduled for November 2, 2012. Having considered the papers submitted, and for the reasons discussed below, the Court hereby GRANTS defendants' motion to dismiss with leave to amend on or before November 19, 2012. The Court continues the Case Management Conference to Friday, January 25, 2013 at 3:00 p.m..

**BACKGROUND**

Peterson alleges that on May 5, 2007, her automobile was "rear-ended" by another automobile.

Pl. Opp. to Mot to Dis. at 2 (Dkt. 33).[1] On April 30, 2009, Peterson filed a lawsuit in San Francisco County Superior Court, seeking damages for personal injury/property loss caused by the accident.[2] Def. Mot. to Dis., Lipton Decl., Ex. E (Dkt. 19). On June 14, 2011, she obtained a $6,150.00 arbitral award and judgment against the defendant driver in that case. *Id.* As a result of the injuries caused by the 2007 accident, Peterson received physical therapy services "in May and June in 2007...which I paid for with my own funds." Dkt. 33 at 2. Over a year after the accident, in October 2008 and January 2009, Peterson received additional physical therapy services which were "paid for by my Healthy SF Coverage," a program for low-income uninsured San Francisco residents run by the CCSF, at a cost of $798.00. Peterson Decl. ¶ 7, Dkt. 33-1.

Who should pay for these additional services is the central question in Peterson's dispute with CCSF. Def. Mot. to Dis. at 1 (Dkt. 16). Pursuant to Section 124, Part II, Chapter V of the San Francisco Municipal Code, CCSF filed a lien on Peterson's monetary recovery from the automobile accident for the $798.00 physical therapy services. FAC, Ex. A. According to Section 124, a recipient of medical aid rendered by the City must reimburse the City if financially able to do so. *Id.* Moreover, when the patient asserts or maintains a claim for damages to compensate for the injury for which he or she was treated at City expense, the value of the aid rendered by the City constitutes a lien on the patient's monetary recovery. *Id.*

In her complaint, Peterson asserts that the additional physical therapy sessions in 2008 and 2009 were not related to the 2007 accident. FAC ¶ 6. She does not allege any facts showing what process or procedure initiated by, or connected to defendants led to the issuance of the lien, nor does she allege any facts which would demonstrate that said process or procedure was flawed, invalid or unlawful.

Peterson alleges that she discussed her belief that the medical services at issue were unrelated

---

[1] Generally the Court cannot consider additional facts not properly pled in the complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (as a general rule, the Court "may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion."). However, in this *pro se* action, the Court considers additional facts provided by plaintiff in her opposition papers, for background purposes only.

[2] The Court GRANTS defendants' request to take judicial notice of Exhibits C and E (Dkt. 17) to the Declaration of Mark D. Lipton in support of defendants' motion to dismiss – documents related to *Victoria L. Peterson v. Luis Adame*, San Francisco Sup. Ct. Case No. CGC-09-48758.

to the 2007 accident with the arbitrator who issued the underlying award in her personal injury suit. FAC, Ex. B. In a letter dated June 11, 2011, the arbitrator, treating this discussion as a request to correct the arbitral award, denied that request as untimely, but noted that had her request been timely, he would have corrected the award to note that "the medical care that Ms. Peterson received in October of 2008...was not related to the motor vehicle accident occurring on May 5, 2007," and therefore his "intent was to find that the lien of the City should not be satisfied." *Id.*

In a letter to Peterson dated May 12, 2011, regarding her request that CCSF waive the lien, CCSF stated, "[w]e believe that the charges for hospital services, consisting of three physical therapy sessions – which you claim were necessitated by your ongoing pain and disability resulting from the accident – were incident-related and thus collectible out of the settlement of your action against the defendant." Peterson Decl., Ex. B, Dkt. 33-1.

Although Peterson's underlying grievance appears to be that the lien itself was flawed, her FAC focuses on CCSF's behavior in enforcing the lien. FAC ¶ 10-14. Based on CCSF's enforcement practices, Peterson alleges violations of the Fifth, Thirteenth, and Fourteenth Amendments to the U.S. Constitution, the Americans with Disabilities Act ("ADA"), and California state law prohibiting interference with contracts. *Id.* ¶ 2, 3, 12, 13, 15. Peterson asserts that after she sent defendant Honig a facsimile of the June 11, 2011, letter containing the arbitrator's analysis that the 2008 medical treatment was unrelated to the 2007 accident, Honig "went into bizarre behavior – threatening and faxing plaintiff repeatedly – demanding immediate payment of a debt (lien) ...or negative consequences." *Id.* ¶ 10. Peterson also asserts that Honig was "acting under color of state law" in enforcing the lien and that Honig "knew plaintiff is disabled + purposefully violated the ADA." *Id* ¶ 12-13. Moreover, Peterson alleges that as a result of "the distressing situation" and because Honig "deliberately threatened" her, she "withdrew from the July 2011 bar exam." *Id.* In so doing, Peterson alleges that Honig "interfered w/her contractual right to sit for the exam." *Id.*

CCSF responds first that, as a matter of law, the Office of the Treasurer and Tax Collector ("OTTC"), a named defendant here, cannot be sued because it is a department of San Francisco and is not an independent public corporation. Dkt. 16 at 3. CCSF next argues that, as to the state law claim for interference with contracts, both Honig and CCSF are immune from suit. *Id.* at 5. Finally, as to the

3

remaining federal claims, defendants argue that the factual circumstances alleged simply do not give rise to the claims asserted. *Id.* at 6-8.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

Assuming allegations are true and making inferences in a light most favorable to Peterson, her complaint is fatally deficient because it does not allege facts sufficient to state a plausible federal claim.

As a threshold matter, the Court agrees with defendants that OTTC cannot be properly joined

4

as a defendant in this action. *See Bauer v. County of Ventura*, 45 Cal.2d 276, 288-89 (1955). Therefore, the Court dismisses the FAC as against defendant OTTC.[3]

Peterson refers to 42 U.S.C. § 1983 as the basis for her various federal constitutional claims. *See* FAC at 5. To state a claim under Section 1983, a plaintiff must allege two elements: (1) that a person acting under the color of state law (2) violated a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Although she alleges no facts in this regard, Peterson does assert that defendant Honig was "acting under color of state law" when she enforced the lien.[4] FAC at 5. Even if such a conclusory allegation were sufficient, Peterson fails to allege any facts showing that any defendants were involved in the process that led to the issuance of the lien, that said process was unlawful, flawed, or otherwise invalid, or that Honig or CCSF's collection practices in enforcing the lien violated a protected constitutional right.

First, Peterson's complaint invokes the Fifth Amendment's takings clause, which states, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V, § 4. The Supreme Court made the Fifth Amendment's prohibition against uncompensated takings applicable to the states through the Fourteenth Amendment's due process clause in *Chicago, Burlington & Quincy Railroad Co. v. City of Chicago*, 166 U.S. 226 (1897). There the Supreme Court held that state compensation for government takings must comport with due process of law. *Id.* If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for a taking. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018, n. 21 (1984). "Similarly, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95

---

[3] Defendants also argue that defendant Honig was never properly served. Dkt. 18 at 3. However, service on Honig has since been completed. *See* Dkt. 35.

[4] Although CCSF is named as a defendant in the action, the FAC does not specifically address defendant CCSF or explain how its actions or policies give rise to section 1983 liability. These questions are addressed below, in connection with *Monell v. Dept. of Social Servs.*, 436 U.S. 568 (1978).

5

(1985).

Although not explicitly pled in the FAC, assuming that the "taking" at issue here was the $798 lien, and that said lien constitutes a government "taking" of private property for public use within the meaning of this clause, Peterson fails to allege any facts suggesting that the process for "taking" the property was invalid or inadequate or that the process resulted in denial of just compensation. Indeed, Peterson alleges no facts to demonstrate that defendant Honig is even responsible for the process that led to the "taking." The Court is left to speculate, based on a an improperly submitted exhibit to a declaration attached to Peterson's opposition to the motion to dismiss, that Peterson is in fact engaged in some sort of process to appeal the lien. *See* Dkt. 33, Ex. B (May 12, 2011, letter from OTTC offering Peterson a settlement ("Settlement Offer Letter")). However, whether the process or Peterson's apparent appeal in that process has led to an unlawful government taking is nowhere alleged in the FAC. Accordingly, Peterson's Fifth Amendment claim is dismissed.

Peterson also invokes the Fourteenth Amendment's equal protection, procedural due process, and substantive due process protections in her complaint. First, the "Equal Protection Clause ensures that 'all persons similarly situated should be treated alike.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 439 (1985)). To state an equal protection claim, a plaintiff "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). There are no such facts alleged in Peterson's FAC. At most, Peterson alleges that she is disabled and that Honig knew of her disability (FAC ¶ 13), but does not allege any facts to connect her disability with CCSF or Honig's practices in enforcing the lien. Accordingly, the Court dismisses Peterson's Equal Protection claim.

Similar to the Fifth Amendment, the Fourteenth Amendment's due process clauses (procedural and substantive) apply only when a constitutionally protected liberty or property interest is at stake. *Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977). Here, Peterson presumably asserts a property interest in the $798 lien. However, the crux of Peterson's allegations in the FAC is that she is dissatisfied with the *collection process*, insofar as defendants' "threatening" and "repeated" attempts to seek payment for medical services caused Peterson "financial/mental/physical stress." FAC ¶ 10, 14. As with the

6

Fifth Amendment claim, nowhere does Peterson allege facts showing any procedural or substantive violation in the process or policy that led to the issuance of the lien. Her only allegation as to the invalidity of the lien is that the arbitrator who adjudicated her personal injury suit disagrees with CCSF's assessment that the medical services provided in 2008 were related to the injuries suffered in the 2007 accident. FAC ¶ 7, Ex. B. This falls far short of alleging a constitutional violation in the procedure or policy that led CCSF to issue the lien or in defendant's effort to enforce the lien. Due process of law requires that the government construct an appropriate process when such important liberty or property interests are at stake, but it does not guarantee a desirable result. Here, apparently Peterson has been involved in such a process, and is unhappy with the result. *See* Dkt. 33, Ex. B (Settlement Offer Letter). She does not, however, allege facts showing a constitutional infirmity in that process.

The only other federal claims Peterson alleges, violation of the Thirteenth Amendment and violation of the ADA, are equally without merit. The Thirteenth Amendment prohibits involuntary servitude. Nothing in Peterson's allegations give rise to a claim that defendants forced her into involuntary servitude. Additionally, under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such an entity." 42 U.S.C. § 12132. Peterson's conclusory allegation, "Honig knew plaintiff is disabled + purposefully violated the ADA," does not suffice. FAC ¶ 13. There is no allegation in the FAC that connects Peterson's disability with defendants' lien enforcement practices or the process that led to the lien's issuance. Accordingly, the Court dismisses the Thirteenth Amendment and ADA claims.

Peterson's complaint is vague as to whether her allegations are against Honig or against CCSF. To the extent they are against CCSF, such a claim is appropriate when the enforcement of a municipal policy or custom is the moving force behind the violation of a constitutionally protected right. *Monell v. Dept. of Social Servs.*, 436 U.S. 568, 563-64 (1978). To state such a claim against CCSF, Peterson must plead "a constitutional right violation resulting from (1) an employee acting pursuant to an expressly adopted official policy; (2) an employee acting pursuant to a longstanding practice or custom; or (3) an employee acting as a final policymaker." *Delia v. City of Rialto*, 621 F.3d 1069, 1081-82 (9th

7

Cir. 2010) (citation and internal quotation marks omitted). As discussed, Peterson's complaint fails to allege a violation of any constitutional right. Morever it makes no allegations as to CCSF's policies or practices or Honig's action pursuant to such policies or practices. Thus, to the extent her constitutional claims are against CCSF as distinct from Honig individually, those claims fail for the additional reason that they do not adequately plead section 1983 liability against CCSF.

The gravamen of Peterson's grievance is that she is upset at the collection practices associated with a lien, and at being required to reimburse CCSF for medical services she received 2008 and 2009, based on an arbitration award she received from a car accident in 2007. However, Peterson has not shown that her disagreement with CCSF over whether the 2008 and 2009 medical services were related to the 2007 accident or that her dissatisfaction with defendants' collection practices state a federal cause of action. Moreover, Peterson has made no allegations that defendant Honig had any role in the process that led to the issuance of the lien or that the process itself was invalid, unlawful, or otherwise constitutionally infirm.

Accordingly, the FAC will be dismissed. Given plaintiff's *pro se* status, this dismissal is with leave to amend, although the Court is not sanguine that any successful amendment will be possible on these facts. **Any amended complaint must be filed no later than November 19, 2012.**

The Court observes, however, that on the facts alleged, a more direct approach to resolution of Peterson's grievances might be application to a state or local forum which adjudicates such matters, rather than a federal court only empowered to hear questions of federal law.

## CONCLUSION

The Court finds that plaintiff has failed to state a claim and therefore DISMISSES the complaint with leave to amend on or before November 19, 2012. **The Case Management Conference currently scheduled for November 2, 2012 is continued to Friday, January 25, 2013 at 3:00 p.m.**

**IT IS SO ORDERED.**

Dated: October 30, 2012

SUSAN ILLSTON
United States District Judge